No. 528

First Circuit

LEBLANC v. O'DONOVAN

(December 30, 1929. Opinion and Decree.)
(March 5, 1930. Rehearing Refused.)

Daspit, Huckabay & Blanche, of Baton Rouge, attorneys for plaintiff, appellee.

Taylor, Porter, Loret & Brooks, of Baton Rouge, attorneys for defendant, appellant.

MOUTON, J.   On January 4, 1929, while driving an auto on a highway, O'Donovan, defendant, ran up against Mrs. Felix Leblanc, breaking her left leg, which, it is alleged by plaintiff, was the cause of her death, which occurred a few days thereafter at the General Hospital in the city of Baton Rouge.

The accident occurred early in the morning, on the public highway known as the Bayou Sarah road, which runs into said city from the north. Defendant was coming from that direction at the time and traveling southward.

It is claimed by plaintiff, the surviving husband of the deceased, who is suing for himself and his minor children, that Mrs. Leblanc had crossed the highway from the east side and was walking near the edge on the west side thereof, going southward towards the church, when she was run into and struck by the auto defendant was driving. She was therefore, according to plaintiff's contention, struck in the rear on the left leg by the auto, which it is not disputed was going in the same direction at the time.

The contention of the defendant, on the other hand, is that she came across the highway from the east, suddenly emerged from behind a car which was running northward in the opposite direction, and that when he first saw her she was about 15 feet ahead of him, running to the west side of the highway; that he immediately swerved his auto to the east to avoid striking her, but that she was so close when he first saw her that it was impossible for him to swerve sufficiently to the east to avert the collision; and that he accidentally struck her on the leg. It is therefore apparent, from the foregoing conflicting and contradictory contentions between the litigants, that a logical solution of the issue presented requires an analysis of the evidence to ascertain whether deceased had crossed the highway to the west side and was going southward when she received the injuries alleged by plaintiff, which resulted a few days thereafter in her death, as shown by the testimony of the physicians who testified in the case.

Only two witnesses, Noble Leblanc, son of the deceased, and the defendant, saw the occurrence. Noble, who attained his fifteenth year the day after his mother's death, testified quite at length in the case. He says that at about 6:30 or 6:40 in the morning they left their home in Baton Rouge to attend early mass at the Catholic Church. He says he failed to get an aunt, who was to go to church with himself and his mother; that they took the street car, got off, and at Erie street they walked across the Bayou Sarah road or highway from the east to the west side. They proceeded southward to the point where his mother was struck. This highway, the record shows, is about 24 feet wide, is paved in the center, and has graveled shoulders, about 6 or 7 feet wide, on each side. He says he was walking a few feet behind his mother on the graveled shoulder on the west side when she was injured, and that she was walking on the west side of the pavement about 1½ feet from the edge where it abuts the shoulder of the roadway. He testified his mother

suffered with corns, and was wearing thin soled shoes, which is the reason that she was walking on the pavement, and that he was trailing behind her on the rocks and gravel of the highway, because his mother had so advised him as a precaution against the possible danger of injury from the autos that were running along the highway. He testifies that he kept his eye on his mother as she was walking ahead; that she had walked about 20 steps on the pavement, when "he saw the light on the back of her coat," looked backward, and saw the car coming by which she was struck. He was asked if he had said anything to his mother when he saw this light in his rear; he answered he had not, because she was out of the way of the advancing car. As his head was turned backward, he says, he heard a scream; that he did not see when the car hit her, but heard the impact which resulted from the collision. At that time, he testified, he was about 3 feet behind his mother. He says he had his eye on her all the time, although he had stopped to tie his shoe, and testified that his position in tying his shoe did not prevent him from keeping his eye on his mother. If that boy had been trying to frame up a case on defendant, on his own initiative or by the influence of some one else, he never would have said that he had not actually seen the accident, or that he was looking at his mother, and at the same time was tying his shoe. Such a narrative as that, in our opinion, shows that he was testifying to what had occurred as he saw it. There is no inference, to I drawn from the recital of the facts or circumstances in the testimony of the witness, suggestive of any prevarication on his part.

Sam Barthe, a witness for plaintiff, testifies that he was on the east side of the highway when the collision occurred at a distance of about 250 feet from the spot where the deceased was struck. He fixes the time of the accident at about 6:30 or 6:40 in the morning, which coincides, it may here be stated, with the time of the occurrence, given by Noble Leblanc, the boy witness. He says the weather was fair and clear, as was also sworn to by the boy, and of which fact there appears to be no contradiction. He says he had been noticing a number of people going to church walking along the highway; that the deceased was walking on the pavement, about 3 feet from the edge, and that the boy was in her rear. He says he did not see when deceased was struck, but that he heard the "bump" or crash. He admits that most all of the cars that were traveling on the highway had their lights on, including the defendant's car, but says there was then no necessity for these lights.

The testimony of this witness therefore corroborates the evidence of Noble to the effect that the accident occurred on the west side of the highway, while the deceased was going south in the same direction defendant's car was moving, and that she was near the edge of the pavement when she was injured.

The preponderance of the evidence, and which unquestionably must have been accepted by the district judge as true, completely contradicts and destroys the evidence of defendant, when he says that the deceased came from the east side of the highway, suddenly emerged from behind a car that was going north, was running to the west side, when his auto struck her, although he had made every effort possible to pass east of her, and to thus avoid the accident. Defendant testifies that his view was unobstructed at the time, either

by the lights of the automobiles or otherwise; that the windshield on his car was clean, and that its headlights were burning brightly. The fact is that he testifies that, under the "conditions existing that morning," a person driving an automobile could "easily see a pedestrian at a distance of at least 200 feet." He also stated that his headlights threw a glare of light "some way" on the sides of the roadway to the right and the left. As such were the conditions then existing, it is evident that, had defendant been exercising ordinary care, he could not possibly have failed to see the deceased as she was walking along the edge of that highway, and fully in time to have averted the collision. He says he was traveling between 25 and 30 miles an hour; this is possible, but not probable. Whether he was traveling at that speed or not, he was, in our opinion, grossly negligent at the time, as he could have easily passed to the east, where there was ample room, and that the accident was the result of careless or reckless driving.

Defendant's counsel urges the point that the deceased was walking on the wrong side of the highway, and in violation of the regulations of our statutes on this subject. Even if she were, as defendant could have unquestionably avoided the collision, there is no legal excuse for his reckless act, to which deceased did not in any way contribute, which is also another defense urged by defendant, but not in the least supported by the evidence.

Under the circumstances of the accident hereinabove given, the deceased was also entitled to protection under the humane doctrine of the "last clear chance," which has been frequently applied to cases of this character.

We find no error in the judgment rendered against defendant, from which he appeals, and it is therefore affirmed, with cost, for the reasons above stated.